**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

MARLON MEDINA MEJIA,

Petitioner,

v. Case No. 2:26-cv-02329-MSN-cgc

CHRISTOPHER BULLOCK,
New Orleans Field Office Director for
ICE Enforcement and Removal Operations,

Respondent.

---

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Marlon Medina Mejia's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"), filed March 25, 2026.[1] (ECF No. 2.) Petitioner, a native and citizen of Honduras, challenges the lawfulness of his continued detention as an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b). (ECF No. 2 at PageID 11.) The Court ordered Respondent to show cause why the writ should not issue. (ECF No. 10.) Respondent argues that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and is therefore ineligible for release on bond. (ECF No. 12 at PageID 51.) In his Reply, Petitioner contends that his parole and subsequent residence in the interior makes him more like the petitioners in *Lopez-Campos v. Raycraft*, 175 F.4th 706 (6th Cir. 2026). (ECF No. 13 at PageID 73.) He seeks

---

1 Initially, seven alien detainees, including Petitioner, brought this habeas action collectively, seeking the same relief. However, counsel later filed a motion to sever (ECF No. 6) the other six petitioners from this action.

immediate release or, alternatively, a bond hearing. (ECF No. 13 at PageID 80.) For the reasons below, the Petition is **DENIED**.

## BACKGROUND

On December 9, 2024, Petitioner applied for admission at the San Ysidro Port of Entry on the U.S.–Mexico border. (ECF 12-3 at PageID 61.) The Department of Homeland Security ("DHS") served Petitioner with a Notice and Order of Expedited Removal finding him to be an "arriving alien" and charging him as inadmissible because he lacked valid entry documents under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id.*) Petitioner stated that he feared returning to his home country; he was ultimately released into the interior pending his removal proceedings. (ECF No. 12 at PageID 45–46.) On January 21, 2026, Petitioner was re-detained during a routine check-in, for having four compliance violations with the Alternatives to Detention ("ATD") program and being "verbally noncompliant with ATD staff." (ECF No. 12-2 at PageID 58.) On May 19, 2026, Petitioner was ordered removed by an immigration judge. (ECF No. 12-4.) His appeal remains pending.[2] (ECF No. 12 at PageID 46.)

## ANALYSIS

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (citation modified). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas is available to aliens to challenge the lawfulness of their detention. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

### A. The Court has Jurisdiction to Decide Petitioner's Detention-Based Claims.

---

2 *See Automated Case Information for Marlon Medina Mejia*, Executive Office of Immigration Review, https://acis.eoir.justice.gov/en/caseInformation (last visited November 23, 2026).

District courts may issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Petitioner was detained at the West Tennessee Detention Center in Mason, Tennessee, at the time he filed his Petition; he also named the Immigration and Customs Enforcement ("ICE") District Director who oversees enforcement and removal operations in the Western District of Tennessee as the proper respondent. (ECF No. 2 at PageID 3; ECF No. 12 at PageID 46.) Accordingly, the Court has jurisdiction to decide Petitioner's claims. *See Rumsfeld v. Padilla*¸ 542 U.S. 426, 443 (2004) ("[J]urisdiction lies in only one district: the district of confinement."); *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003) ("We conclude that . . . the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners.").

**B. Petitioner's Statutory Claim Fails on the Merits.**

Petitioner argues that he is not subject to mandatory detention under § 1225(b)(2)(A) because he was paroled into the interior and resided therein before being re-detained by ICE in December 2025. (ECF No. 2 at PageID 8; ECF No. 9 at PageID 34–35; ECF No. 13 at PageID 74.) Respondent argues that Petitioner is classified as an "arriving alien" who was paroled into the United States; therefore, he is an "applicant for admission" and subject to mandatory detention under § 1225(b)(1)(B)(ii). (ECF No. 12 at PageID 48.) Respondent has the better of the argument.

Under 8 U.S.C. § 1225(a), "an alien who arrives in the United States, or is present in this country but has not been admitted, is treated as an applicant for admission." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citation modified). All applicants for admission "shall be inspected by immigration officers" to determine their admissibility. 8 U.S.C. § 1225(a)(3). If the immigration officer determines that an arriving alien is inadmissible, then the alien shall be detained under either § 1225(b)(1) or (b)(2). *Jennings*, 583 U.S. at 287.

Section 1225(b)(1)(A) covers aliens who are inadmissible due to misrepresentation or, as in Petitioner's case, lack of valid entry documents.[3] *Id.* Such aliens are subject to expedited removal proceedings unless they express "either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). Aliens who express a fear of persecution are referred for an interview with an asylum officer and "*shall be detained* for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii) (emphasis added).

Section 1225(b)(2) serves as the "catchall provision" that covers all applicants for admission who are "not clearly and beyond a doubt entitled to be admitted" and, *inter alia*, not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(2)(A). Such aliens "*shall be detained* for a [removal] proceeding under section 1229a of [Title 8]." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As emphasized above, whether an alien is detained under § 1225(b)(1) or (b)(2), detention is mandatory until certain proceedings conclude. *Jennings*, 583 U.S. at 297. Regardless of whether (b)(1) or (b)(2) applies, DHS may parole aliens detained at or near the border into the United States. 8 U.S.C. § 1182(d)(5)(A).

Unlike the mandatory detention scheme of § 1225(b), which applies to applicants for admission who are initially detained at or near the border, the permissive detention framework of § 1226(a) applies to aliens who are already present in the United States. *Lopez-Campos*, 175 F.4th at 732. This includes aliens who are "in and admitted to the United States" and later become deportable, 8 U.S.C. § 1227(a); *see also Jennings*, 583 U.S. at 288, and aliens who cross our borders without inspection and reside unlawfully within the interior, *Lopez-Campos*, 175 F.4th

3 Although inapplicable here, § 1225(b)(1) also covers "certain other aliens" who are "designated by the Attorney General" in his "sole and unreviewable discretion." 8 U.S.C. § 1225(b)(1)(A)(iii).

at 732. Section 1226(a) generally[4] gives DHS discretion to issue warrants and detain such aliens "pending a decision on whether the alien is to be removed from the United States." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1226(a)). It also grants discretion to release such aliens on bond or conditional parole. *Id.*

Petitioner's statutory argument turns on the fact that he was paroled into the United States and resided here before being re-detained. He argues this fact makes him more like those aliens in *Lopez-Campos* who were found to be subject to § 1226(a)'s permissive detention framework. He relies upon the reasoning of *Lopez-Campos* to support his argument, but his reliance is misplaced. *Lopez-Campos* involved aliens who never presented themselves for inspection at the border and were therefore never lawfully detained under § 1225(b)(1) or (b)(2). *See Lopez-Campos*, 175 F.4th at 721 ("The thrust of this appeal is whether a noncitizen detained within the interior of the United States *who never affirmatively applied for admission* is subject to 8 U.S.C. § 1225(b)(A)'s mandatory detention scheme or 8 U.S.C. § 1226's permissive detention scheme (emphasis added)).

Unlike the aliens in *Lopez-Campos*, Petitioner presented himself for inspection at the border and was found to be inadmissible because he lacked valid travel documents. When he expressed fear of persecution, he was taken into DHS custody and later paroled into the interior. Therefore, he is properly detained under either § 1225(b)(1) or (b)(2). Under either § 1225(b)(1)(B)(ii) or (b)(2)(A), Petitioner "shall be detained" until either his asylum or removal proceedings are final—here, those proceedings remain pending.

4 Section 1226(c) removes discretion for certain aliens described subsection (c).

The fact that ICE paroled Petitioner into the interior pending those proceedings does not alter his position. Under 8 U.S.C. § 1182(d)(5)(A), DHS may "parole into the United States temporarily . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." Importantly, "[a]n alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B); *see also id.* § 1182(d)(5). "[W]hen the purposes of such parole shall, in the opinion of [DHS], have been served *the alien shall forthwith return or be returned to the custody from which he was paroled* and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Because Petitioner was paroled from § 1225(b) custody, he was returned to § 1225(b) custody once his parole ended and ICE detained him. To hold otherwise would be "inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of [the Supreme Court]." *Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958).

Because Petitioner presented for inspection at the border, is in active removal proceedings, and is not subject to a final order of removal, he is detained under § 1225(b). Nothing in *Lopez-Campos* alters this conclusion. For these reasons, Petitioner's statutory claim fails.

**C. Petitioner's Constitutional Claims Fail on the Merits.**

Petitioner also challenges his ongoing detention on due process grounds. Citing *Zadvydas*, he argues that his mandatory detention without "any individualized assessment of flight risk or danger" is a *per se* due process violation. (ECF No. 2 at PageID 12.) His claim fails.

The Supreme Court has long held that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border" (the "entry fiction"). *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020)

(citation modified); *see also Leng May Ma*, 357 U.S. at 188 (holding temporary parole into U.S. while admissibility was being determined did not alter status); *Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (holding alien "was still in theory of law at the boundary line and had gained no foothold in the U.S." despite temporary release into interior). And those stopped at the border are entitled only to the procedure authorized by Congress. *Thuraissigiam*, 591 U.S. at 138–39; *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").

In this context, Congress has required that "applicants for admission," who present for inspection at the border and are determined to be inadmissible, "shall be detained" until either removal or asylum proceedings become final. 8 U.S.C. § 1225(a), (b)(1)(B)(ii), (b)(2)(A); *see Jennings*, 583 U.S. at 297. The only mechanism for release is discretionary parole. *See* 8 U.S.C. § 1182(d)(5)(A). Discretionary parole does nothing to alter the alien's legal status, and once parole ends, the alien is returned to the § 1225(b) custody. *Id.*

Nothing in these procedures vests in Petitioner or those similarly situated a right to be free *within our borders*. For sure, Petitioner has an interest in being at liberty. But when standing at the threshold, that interest runs only one way. As the Court put it in *Thuraissigiam*, "the Government is happy to release him—provided the release occurs in the cabin of a plane bound for [Honduras]." 591 U.S. at 119. Although this compels a harsh result, it is the result that Congress and our precedents mandate. As *Zadvydas* makes clear, "[t]he distinction between an

alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. Here, that distinction controls.[5]

**CONCLUSION**

Accordingly, habeas relief is **DENIED**. Because this Order resolves the case in its entirety, all other pending motions are **DENIED AS MOOT**. The Petition shall be **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**, this 23rd day of November, 2026.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

5 Like his reliance on *Lopez-Campos*, Petitioner's reliance on *Zadvydas* is misplaced. *Zadvydas* turned on an ambiguity within the text of the final removal statute to invoke the constitutional avoidance canon. 533 U.S. at 699. That ambiguity is not present in § 1225(b). Further, the risk of deprivation was indefinite in *Zadvydas*. *Id.* at 690 ("A statute permitting indefinite detention of an alien would raise serious constitutional problems."). Here, Petitioner's detention has a definite end point: the conclusion of his removal proceedings.